In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-2458

KATHREAN JOHNSON,

*Petitioner-Appellant,*

*v.*

MELODY HULETT, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4302—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED MARCH 31, 2008—DECIDED JULY 27, 2009

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Kathrean Johnson was convicted of first-degree murder after she shot and killed King "Mickey" Holzendorf outside of Jones City Tire Shop in Chicago. After an unsuccessful direct appeal and post-conviction proceedings in the Illinois state courts, she filed a habeas petition in the district court. The court denied the petition because the claims she presented for federal habeas review were different from those she had presented to the state court.

We affirm. On appeal, Johnson has tried to recast her habeas claims to conform more closely to the ineffective-assistance-of-counsel claims she asserted in the postconviction proceedings in state court. But arguments raised for the first time on appeal are waived. Because the grounds for relief Johnson included in her habeas petition differ markedly from those she presented in state court, they are procedurally defaulted. Having failed to include in her habeas petition the claims she fairly presented in the state court, she cannot now resurrect them on appeal. Even if Johnson could overcome these procedural irregularities, she would lose on the merits. The state appellate court did not unreasonably reject Johnson's ineffective-assistance-of-counsel claims.

## I. Background

Kathrean Johnson was convicted of first-degree murder after a bench trial in Cook County Circuit Court. The evidence presented at trial established that Johnson fatally shot an unarmed coworker at a Chicago tire shop after an argument about the volume of a shop's radio. More specifically, on a Saturday afternoon in the late spring of 1999, Johnson was working at the Jones City Tire Shop in Chicago. She and fellow employee King "Mickey" Holzendorf had a rocky relationship and on that day were arguing over the volume of the shop's radio. The two began scuffling after Johnson tried to lower the volume. The shop's owner, Henry Hughes, asked Johnson to leave the shop. Johnson did so but returned a short

time later and told Erby Taylor, another coworker, that she had retrieved a gun from her apartment, which she hid in her jacket. Taylor paid no attention, and Johnson resumed her work.

The dispute soon flared again and spilled outside where Holzendorf was working on a car in the shop's yard. As Johnson and Holzendorf continued their argument, Eugene Hardrick, another coworker, came outside on his way to the grocery store across the street. Hardrick testified that Holzendorf had nothing in his hands and that Johnson was wearing a jacket in which she had a gun. Johnson pulled the gun out of her jacket pocket and shot once towards Holzendorf's feet. He jumped back and held out his hands to show they were empty. Johnson then raised the gun and shot Holzendorf in the chest.[1]

---

[1] Johnson's trial testimony differed from the accounts provided by Hardrick and contained in Johnson's confession in police custody following the shooting. The trial judge did not believe Johnson's testimony was credible and instead credited her statement to police as well as the testimony of Hardrick and other eyewitnesses. *See infra* pp. 4-5. State-court determinations of factual issues are "presumed correct" unless the petitioner can rebut the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996) ("The resolution of a factual issue that involves the state trial court's evaluation of the credibility and demeanor of witnesses is one that is accorded particular deference."). Johnson has made no attempt to challenge the state court's factual determinations.

At the sound of gunfire, Hughes came out of his shop and asked Johnson why she had shot Holzendorf, who was his cousin. Johnson told Hughes that if he didn't back away from her, she would shoot him as well. Hughes stepped back and walked over to where Holzendorf lay on the ground. Neither he nor Taylor (who had come out of the shop a few moments before Hughes) noticed any weapons near Holzendorf's body. In the meantime, Hardrick went to the grocery store across the street and called the police.

After the shooting Johnson became frightened and took a cab back to her apartment. She changed coats and was about to leave the building when police arrived and arrested her. At the police station, Johnson agreed to make a statement to Assistant State's Attorney Andreana Turano-Michiels, who transcribed the statement by hand. In it Johnson admitted that Holzendorf was unarmed and that she shot him at close range.

The state's evidence at trial consisted primarily of testimony from Taylor, Hughes, and Hardrick. Johnson's confession was also admitted into evidence. Johnson took the stand in her own defense and testified in contradiction of her prior statement. In addition, the parties stipulated that a toxicology analysis confirmed that Holzendorf had cocaine, morphine, and ethanol in his blood at the time of his death.

The state trial court entered its findings into the record at the close of evidence. The judge refused to credit Johnson's trial testimony because she was "elusive" on cross-examination and "parried with the State's attorney." On

the other hand, the court said, "[A]ll of the state's witnesses testified very forthrightly and credibly." Based on these credibility determinations and its evaluation of the evidence, the court found Johnson guilty of first-degree murder and sentenced her to 25 years in prison.

Johnson's conviction was affirmed on appeal, and she then filed a pro se petition for postconviction relief in the circuit court, claiming (along with other arguments not relevant here) that she had received ineffective assistance of counsel. The circuit court denied relief, and the Illinois Appellate Court affirmed. After the Illinois Supreme Court denied leave to appeal, Johnson filed a pro se petition for a writ of habeas corpus in the district court. In her petition, Johnson generically asserted a violation of her right to the effective assistance of counsel and also included a variety of other claims. Noting that the grounds for relief in Johnson's habeas petition had shifted from those she asserted in state court, the district court held that she had procedurally defaulted her claims and denied the petition.

We issued a certificate of appealability on two questions: whether Johnson's habeas claims were procedurally defaulted and whether Johnson's trial counsel was ineffective in failing to develop certain evidence relevant to the issue of Johnson's intent.

## II. Analysis

The district court held that all of the claims Johnson raised in her habeas petition were procedurally defaulted

because they either were not raised in the state-court postconviction proceedings or were raised but later abandoned. To obtain federal habeas review, a state prisoner must first submit his claims through one full round of state-court review.[2] *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."); *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To satisfy this requirement, Johnson must have fairly presented the substance of her claims to the state courts by articulating both the operative facts and applicable law that she claims entitle her to relief. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). The penalty for failing to fully and fairly present her arguments to the state court is procedural default. *Id.* We may consider a defaulted claim only if the petitioner "can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Johnson*, 518 F.3d at 455-56.

In her state postconviction petition, Johnson argued (among other claims not relevant here) three different

---

[2] It is undisputed that Johnson exhausted her state remedies in that she proceeded through a direct appeal and one full round of postconviction proceedings. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The issue here, as we will explain, is whether she satisfied the fair presentment requirement.

theories of ineffective assistance of counsel based on *Strickland v. Washington*, 466 U.S. 668 (1984). First, she claimed that her trial counsel should have developed a more complete argument about her state of mind based on her knowledge of Holzendorf's violent past. Counsel elicited testimony from Johnson that she had earlier heard Holzendorf brag about having served time in the penitentiary on a murder charge; in her postconviction motion, she claimed that her trial counsel failed to establish the effect of this information on her state of mind at the time of the shooting. Second, and relatedly, she claimed that her trial counsel failed to develop evidence that the alcohol and narcotics in Holzendorf's system could have made him violent and aggressive, supporting her claim that she was acting in self-defense when she shot him. Finally, she argued without elaboration that her counsel failed to investigate two potentially exculpatory witnesses—a Mr. Smith and a Mr. Brown—who could have provided an unbiased account of the altercation. The state postconviction court rejected these arguments and denied relief. The Illinois Appellate Court affirmed, concluding that prejudice under *Strickland* had not been shown.

In her habeas petition in the district court, Johnson raised entirely different claims. Indeed, only one of her habeas claims was even couched in the language of ineffective assistance of counsel. In this claim, Johnson noted the fact that Holzendorf had alcohol and drugs in his system at the time of his death, but went on to contend only that her counsel was ineffective for failing to explain certain aspects of the judicial system to her. Her

argument about Brown and Smith morphed into a new claim: that the state had deliberately prevented "her two witness[es]" from testifying. She did not mention the issue of Holzendorf's murder conviction at all. Finally, her petition raised the following additional arguments, not made in the state-court postconviction proceedings: (1) the evidence did not support her conviction; (2) her statement to the assistant state's attorney was involuntary; (3) Taylor and Hardrick committed perjury; and (4) she was charged with two counts of first-degree murder in violation of double jeopardy.

The district court contrasted the contents of Johnson's habeas petition with the arguments she presented to the state court, found a procedural default, and denied relief. On appeal, Johnson belatedly attempts to reassert the ineffective-assistance-of-counsel arguments she raised in the state court. She notes that her habeas petition was filed without the assistance of counsel and argues that a liberal reading of it permits us to reach the merits.

Our review of the district court's finding of procedural default is de novo. *Lewis*, 390 F.3d at 1025. We agree with the district court that Johnson's habeas petition did not raise any of the three arguments she presented to the state appellate court and now attempts to reassert on appeal. Claims not made in the district court in a habeas petition are deemed waived and cannot be raised for the first time on appeal. *Weber v. Murphy*, 15 F.3d 691, 695 (7th Cir. 1994).

A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; Johnson

must have "identif[ied] the specific acts or omissions of counsel that form the basis for [her] claim of ineffective assistance." *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997) (internal quotation marks omitted). Thus, Johnson cannot argue one theory to the state courts and another theory, based on different facts, to the federal court. *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998) (failing to argue in state court that counsel was ineffective for not calling a certain witness resulted in default, even though petitioner had previously argued that other witnesses should have been called by counsel); *see also Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007); *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001); *Whitehead v. Cowan*, 263 F.3d 708, 730 n.5 (7th Cir. 2001). Yet that is essentially what she did here.

Johnson's claim in her habeas petition regarding the absence of "her two witness[es]" does not even mention Brown and Smith, nor can it fairly be construed as a Sixth Amendment claim of ineffective assistance of counsel. Her petition asserts only that she was "denied the right to have her two witness[es] testify on her behalf" because "they were never call[ed] to the stand" even though they were on the prosecutor's witness list.[3] This

---

[3] In handwritten attachments to her habeas petition, Johnson referred only to witnesses Hardrick and Taylor, not Brown and Smith. She claimed that Hardrick and Taylor committed perjury at her trial, violating her right to due process. The district court interpreted this as a separate claim for relief—a claim she raised in her state postconviction petition but later

(continued...)

appears to be an accusation of misconduct by the prosecu-
tion, something akin to a claim under *Brady v. Maryland*,
373 U.S. 83 (1963), which is hardly the same as an
ineffective-assistance-of-counsel claim. Instead of putting
the same "operative facts and controlling law" in her
habeas petition as she did in state court, *Anderson*, 471
F.3d at 815, Johnson asserted an entirely new constitu-
tional claim that the district court correctly determined
was defaulted. Moreover, as we have noted, Johnson
may not save her claim on appeal by recasting it as an
allegation that her counsel should have investigated
Brown and Smith as potential exculpatory witnesses. That
argument is waived for not having been raised in the
habeas petition.

The other two theories of ineffective assistance of counsel
asserted in state court and now argued belatedly on
appeal—counsel's failure to develop expert evidence on
the effect of the drugs and alcohol in Holzendorf's
system and counsel's failure to explore the effect
Holzendorf's murder conviction had on Johnson's state
of mind—were not pursued in the habeas petition at all.
Instead, Johnson asserted that her counsel "failed to
discuss the judicial system" with her, thereby leaving
her ignorant of such concepts as bench trials, plea
bargains, and the possibility of a reduction in the charge

---

[3] (...continued)
abandoned. Consequently, the claim is defaulted because
she failed to pursue it through one full round of state review.
*Picard*, 404 U.S. at 275-76; *Lewis*, 390 F.3d at 1025.

to second-degree murder. In other words, she did not allege that her counsel was ineffective for failing to develop certain evidence at trial, but that her counsel was ineffective for failing to explain how she could have bargained for a lesser charge and avoided a trial altogether.

Although we construe pro se petitions liberally, *Lewis*, 390 F.3d at 1027, this principle cannot help Johnson here. Her habeas petition simply cannot be stretched to encompass the ineffective-assistance-of-counsel claims she presented to the state courts and now attempts to recapture on appeal. We note that Johnson's state-court postconviction petition—also filed pro se—described in some detail the very grounds of ineffective assistance of counsel that she failed to assert in the district court. This suggests she did not lack the knowledge or ability to include these claims in her habeas petition.

Johnson has not attempted to establish cause and prejudice to excuse the procedural default, nor has she argued that our failure to consider her claims would result in a fundamental miscarriage of justice. Even if she could overcome these hurdles, she would not prevail. Under the Antiterrorism and Effective Death Penalty Act of 1996, we cannot grant habeas relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Johnson*, 518 F.3d at 456. "This is a difficult standard [for habeas petitioners] to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.' " *Jackson v. Frank*, 348 F.3d 658, 662 (7th

Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Here, the Illinois Appellate Court rejected Johnson's ineffective-assistance claims based on its conclusion that she had not established prejudice under *Strickland*. More specifically, the court concluded,

> In light of the overwhelming evidence of guilt, including testimony from Eugene Hardrick, an eyewitness who, from 10 feet away, saw defendant shoot the unarmed victim[,] and defendant's confession in which she admitted to leaving the tire shop after an argument with the victim only to return with a handgun, defendant cannot show a reasonable probability that but for these claimed errors the outcome of her bench trial would have been different.

*People v. Johnson*, No. 1-03-0998, slip op. at 9-10 (Ill. App. Ct. Aug. 19, 2004). This analysis reflects a correct statement of the *Strickland* standard for prejudice, and the court's conclusion lies well within the boundaries of permissible differences of opinion. That is, it is a manifestly reasonable application of the *Strickland* standard to the specifics of Johnson's case.

AFFIRMED.