NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 19, 2012[*]
Decided November 19, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2064

| | |
|---|---|
| CHARLES DONELSON, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 09-cv-6768 |
| MICHAEL P. ATCHISON, | |
| *Respondent-Appellee*. | James B. Zagel, *Judge*. |

**ORDER**

Charles Donelson, an Illinois prisoner, forfeited two months of good time after a disciplinary committee found that he had engaged in sexual misconduct with another inmate and lied to staff members about the incident. Donelson petitioned for a writ of habeas corpus to overturn the decision, *see* 28 U.S.C. § 2254, but the district court denied relief. We affirm the court's decision.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2)(C).

Another inmate, Jacob Tulley, accused Donelson of entering his cell and raping him. Tuelley was alone at the time, and when his cell mate, Glynn Garnett, returned later and noticed that the window in their cell door was covered, he knocked instead of going right in. Donelson then exited, and Garnett observed that Tulley appeared nervous and showered immediately after Donelson had left. When prison investigators confronted Donelson, he denied raping Tulley. Tulley then changed his story and insisted that he and Donelson had engaged in consensual sex (which the Department of Corrections also defines as misconduct).

Donelson received a disciplinary report accusing him of sexual misconduct (not sexual assault), Ill. Admin. Code tit. 20, § 504 app. A (107), and giving false information to staff members, *id.* (303). Six days later a disciplinary committee conducted a hearing at which Donelson testified orally and in writing and also called three alibi witnesses. In finding him guilty, the committee explained in writing that it had relied on statements from Tulley and Garnett. Donelson's administrative appeals were rejected.

Donelson then initiated judicial review in the Illinois courts by petitioning for a writ of mandamus. His only contention was that the disciplinary committee had denied him due process by failing to address in its written decision the contradiction between the two statements Tulley had given investigators. Apparently he also submitted a purported affidavit from Tulley, dated many months after the disciplinary hearing, in which Tulley altogether denies having sex with Donelson and says that he and Garnett fabricated the story to get back at Donelson after an unrelated disagreement. The circuit court rejected Donelson's petition without a written opinion. He appealed, but the appellate court dismissed the case for failure to prosecute after Donelson failed to compile the record in the required format. The Supreme Court of Illinois then denied Donelson's petition for leave to appeal, which asserted that the appellate court should have dispensed with the formal record and reviewed the circuit court's decision based on the documents he supplied even if formatted incorrectly.

Donelson then turned to federal court. Most of his § 2254 petition is devoted to arguing that his federal claims were not procedurally defaulted when the state appellate court dismissed his case for failure to prosecute. *See* 28 U.S.C. § 2254(b)(1)(A); *Mulero v. Thompson*, 668 F.3d 529, 535–36 (7th Cir. 2012). On that point the state no longer disagrees with Donelson, so we need not say any more about the subject. Donelson also claimed that he did not receive all of the procedural safeguards guaranteed by *Wolff v. McDonnell*, 418 U.S. 539 (1974). He insisted that *Wolff* entitled him to lay assistance in defending the disciplinary charges, and also that the finding of misconduct is not supported by the evidence, given that Tulley had made inconsistent statements to prison staff. The first contention, as the state noted, was not included in Donelson's state petition for a writ of

mandamus. The district court concluded that the committee had afforded Donelson all the process he was due and denied his petition.

On appeal to this court Donelson's contentions have expanded again. Because the disciplinary hearing resulted in the loss of good time, Donelson was entitled to 24-hour advance notice of the alleged violations, an opportunity to present evidence to an impartial decision maker, and a written statement supported by "some evidence" explaining the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974); *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012). Donelson does not argue that he was deprived of these protections, except that he continues to insist that the evidence does not support the finding of misconduct. Beyond that contention he again asserts that he was entitled to a lay advocate, and now for the first time also argues that the disciplinary committee was required to administer a polygraph before deciding that he was guilty (it is not clear whether the committee would have given Donelson or Tulley the test).

The state counters that Donelson procedurally defaulted or waived all of these claims by not presenting them to the state circuit court or to the district court. *See* 28 U.S.C. § 2254(b)(1)(A); *Perruquet v. Briley*, 390 F.3d 505, 514, 518 (7th Cir. 2004); *Piggie v. Cotton*, 342 F.3d 660, 667 (7th Cir. 2003). We disagree with the state concerning the claim of insufficient evidence, which Donelson has been asserting from the beginning. But he did not assert in the state circuit court that he should have been provided a lay advocate, and he has not tried to explain or excuse his silence on that claim, so indeed it is procedurally defaulted. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001). In addition, Donelson mentions for the first time in his brief to this court the theory that a polygraph test should have been administered, so he has both procedurally defaulted and waived that argument. That Donelson has claimed a denial of "due process" on the basis of the purported weakness in the evidence underlying the disciplinary decision does not give him license to bring up any contention relating to the disciplinary proceedings; to preserve a claim he had to identify both the operative facts and the controlling legal principles. *See Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009); *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Piggie*, 342 F.3d at 667.

As for Donelson's claim about the evidence, we conclude that the disciplinary committee's decision is supported by at least "some evidence." *Hill*, 472 U.S. at 455. The standard is met even by "meager" evidence or a "modicum" of evidence. *Id.* at 455, 457. At the time of the disciplinary hearing, Tulley maintained that he and Donelson had engaged in consensual sex. Garnett stated that the window to the cell was blocked, that when he knocked on the door Donelson departed from the cell, and that after Donelson had left Tulley appeared nervous and showered. This evidence fully supports the disciplinary

committee's decision, and the recantation purportedly obtained from Tulley months later does not undercut the finding of guilt made by the committee on the evidence before it.

AFFIRMED.